UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

NANCY PATRICIA ESPINOSA and MONICA MONTERO,      **COMPLAINT**

                                                 05 Civ. 6917
                    Plaintiffs,

                                                 Judge
               -against-                         Magistrate Judge

THE DELGADO TRAVEL AGENCY CORP.,                 **Plaintiffs Request Trial by Jury**

                    Defendant.

_____X      **ECF Case**

Plaintiffs **NANCY PATRICIA ESPINOSA** and **MONICA MONTERO** allege that:

1.  The jurisdiction of this Court is conferred because of the presence of:

    (a)    federal questions pursuant to 28 U.S.C. §§ 1331, 1337 and 1343 arising from a claim based upon the Fair Labor Standards Act 29 U.S.C. §201 *et. seq.* (first claim), and from a claim based upon Title VII of the Civil Rights Act of 1964 §701 *et seq.*, as amended 24 U.S.C.A. §2000e, *et seq.* (fourth claim); and

    (b)    a common nucleus of operative fact such that a single case or controversy is present for supplemental jurisdiction (second, third, fifth and sixth claims) pursuant to 28 U.S.C. §1367;

**FIRST CLAIM**
**(Unpaid overtime wages under the Fair Labor Standards Act)**

2.  The venue of this action is properly placed in the Southern District of New York

pursuant to 28 U.S.C. §1391(c), because, upon information and belief, defendant Delgado Travel

Agency Corp. ("Delgado Travel") is duly incorporated in New York and maintains offices doing

business in the Southern District of New York.

3.  Upon information and belief, Delgado Travel's principal place of business is at 79-08

Roosevelt Avenue, Jackson Heights, New York 11372.

4.   Upon information and belief, Hector Delgado ("Delgado") is the President and sole shareholder of Delgado Travel, a travel agency with approximately 27 office locations in New York City.

5.   Plaintiff Nancy Patricia Espinosa ("Espinosa") is a resident of Flushing, New York.

6.   Delgado Travel employed Espinosa as a sales agent in its main office from approximately July 27, 2003, through approximately April 20, 2004, ("Espinosa's period of employment.")

7.   Plaintiff Monica Montero ("Montero") is a resident of Jackson Heights, New York.

8.   Delgado Travel employed Montero as a sales agent in its main office from approximately the second week of June 2003, through approximately November 24, 2004, ("Montero's period of employment.")

**Unpaid overtime wages**

9.   The main office of Defendant Delgado Travel operates seven days a week.

10.  The hours of operation for Delgado Travel's main office are as follows ("hours of operation"):

      (a)    Monday through Friday: approximately 7:30 a.m. to approximately 8:30 p.m.

      (b)    Saturday: approximately 7:30 a.m. to approximately 6:30 p.m.

      (c)    Sunday: approximately 9:00 a.m. to approximately 6:30 p.m.

11.  Espinosa and Montero were required to work according to the following schedule (Delgado Travel's "work schedule"):

      (a)    From Monday through Friday, Espinosa and Montero worked one of two twelve hour shifts– either approximately from 8:30 a.m. to 8:30 p.m. or from 7:00 a.m. to 7:00 p.m.

(b)     On Saturday, Espinosa and Montero worked one of two eleven hour shifts– either 7:30 a.m. to 6:30 p.m. or from 8:30 a.m. to 7:30 p.m.

(c)     On Sunday, Espinosa and Montero worked approximately from 8:30 a.m. to 6:30 p.m.

12.  Espinosa and Montero were given one day off per week, which occurred sometime between Monday through Friday.

13.  During a typical work week, Espinosa and Montero each worked approximately 69 hours.

14.  Delgado Travel paid Espinosa and Montero for the first 40 hours of work time at a regular hourly rate, and the next 20 hours (in excess of 40 hours) at an overtime hourly rate of one and one-half times the regular rate ("Delgado Travel's compensation practice").

15.  Delgado Travel did not compensate Espinosa and Montero for any work hours in excess of 60 hours per week.

16.  When Espinosa and Montero worked the typical 69 hour work week, they were not compensated for 9 hours of that time.

17.  Delgado Travel also required Espinosa and Montero to work on holidays.

18.  Delgado Travel did not provide Espinosa and Montero with sick leave or vacation leave.

19.  If Espinosa or Montero took days off for being sick or vacation, they were not compensated for the sick or vacation days.

20.  Periodically, Delgado Travel offered "travel specials" in which they sold discounted air flights and vacation packages to its customers (Delgado Travel's "discounted vacation packages.")

3

21.   Due to increased customer volume, Espinosa and Montero worked over fourteen hours a day on days when Delgado Travel sold discounted vacation packages.

22.   During the weeks when Delgado Travel offered these discounted sales, Espinosa and Montero worked many more hours than their typical 69 hour work week.

23.   Delgado Travel did not deviate from its compensation practice (*i.e.*, capping Espinosa's and Montero's compensation at 60 hours) regardless (a) if they worked on a holiday, (b) if they worked the typical 69 hour work week, (b) or if they worked in excess of their typical 69 hour work week (*i.e.*, when Delgado Travel sold discounted travel packages.)

24.   As is set forth above, Delgado Travel violated the Fair Labor Standards Act 29 U.S.C. §§ 201 *et. seq.*, by denying overtime wages (or any wages) for hours Espinosa and Montero worked in excess of 60 hours per week.

25.   By reason of the foregoing, Espinosa is entitled to:

    (a)     Compensatory damages in the amount of approximately $5,000 for approximately 324 hours of unpaid overtime work at her $12.82 overtime compensation rate; and

    (b)     Liquidated damages in the equivalent amount of approximately $5,000 pursuant to the FLSA, 29 U.S.C. § 216(b); and

    (c)     The costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

    (d)     Such other and further relief as this Court deems just and equitable.

26.   By reason of the foregoing, Montero is entitled to:

    (a)     Compensatory damages in the amount of approximately $10,000 for approximately 630 hours of unpaid overtime work at her $14.58 overtime compensation rate; and

    (b)     Liquidated damages in the equivalent amount of approximately $10,000 pursuant to the FLSA, 29 U.S.C. § 216(b); and

(c)     The costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

(d)     Such other and further relief as this Court deems just and equitable.

## SECOND CLAIM
### (Unpaid overtime wages under New York Labor Law)

27.  Montero and Espinosa repeat and re-allege each and every allegation of paragraphs 1 through 23.

28.  As is set forth above, Delgado Travel violated N.Y. Labor Law §650, *et seq*. and 12 N.Y.C.R.R. §142-3.2, by denying overtime (or any compensation) for hours that Montero and Espinosa worked in excess of 60 hours per week.

29.  Supplemental jurisdiction is conferred pursuant to 28 U.S.C. §1367 to claims in violation of N.Y. Labor Law §650, *et seq*., and 12 N.Y.C.R.R.§142-3.2.

30.  Espinosa and Montero seek compensatory damages, liquidated damages, and attorney's fees pursuant to N.Y. Labor Law §663 to redress the deprivation of rights accorded to them under N.Y. Labor Law §650, *et seq*., and 12 N.Y.C.R.R.§142-3.2.

31.  By reason of the foregoing, Espinosa is entitled to:

(a)     Compensatory damages in the amount of approximately $5,000 for approximately 324 hours of unpaid overtime work at the $12.82 overtime compensation rate; and

(b)     Liquidated damages pursuant to N.Y. Labor Law §663; and

(c)     The costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

(d)     Such other and further relief as this Court deems just and equitable.

32.  By reason of the foregoing, Montero is entitled to:

(a)     Compensatory damages in the amount of approximately $10,000 for approximately 630 hours of unpaid overtime work at the$14.58 overtime compensation rate; and

(b)     Liquidated damages pursuant to N.Y. Labor Law §663; and

(c)     The costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

(d)     Such other and further relief as this Court deems just and equitable.

**THIRD CLAIM**
**(Unpaid "spread of hour" wages under New York Labor Law)**

33.  Montero and Espinosa repeat and re-allege each and every allegation of paragraphs 1 through 23.

34.   Pursuant to N.Y Labor Law §190, *et seq*. and 12 N.Y.C.R.R. §142-3.4, Espinosa and Montero are entitled to one hour's pay at the basic minimum hourly wage rate ( in addition to the minimum and overtime wage they were entitled to under N.Y. Labor Law §650, *et seq*. and 12 N.Y.C.R.R. §142-3.2)  for every day they worked in which the "spread of hours" for that day exceeded ten hours (New York "spread of hour wages.")

35.  12 N.Y.C.R.R. §142-3.16 defines "spread of hours" as the interval between the beginning and the end of an employee's work day.

36.  Delgado Travel did not pay Espinosa and Montero their "spread of hour" wages on top of their weekly hourly wage, but rather compensated them for only 60 hours of work each week.

37.  As is set forth above, and in paragraphs 1 through 23, Delgado Travel violated N.Y Labor Law §190, *et seq*. and 12 N.Y.C.R.R. §142-3.4 by denying Espinosa and Montero one hour's pay at their respective hourly wage rate (in addition to the minium and overtime wages

they were entitled to under N.Y. Labor Law §650, *et seq*. and 12 N.Y.C.R.R. §142-3.2)  for

every day in which they worked over ten hours (which was approximately six days per week.)

38.  Supplemental jurisdiction is conferred pursuant to 28 U.S.C. §1367 to claims in

violation of N.Y. Labor Law §190 *et seq*., and 12 N.Y.C.R.R §142-3.4.

39.  Espinosa and Montero seek compensatory damages, liquidated damages, and

attorney's fees pursuant to N.Y. Labor Law §198 to redress the deprivation of rights accorded to

them under N.Y. Labor Law §190, *et seq*., and 12 N.Y.C.R.R.§142-3.4.

40.  By reason of the foregoing, Espinosa is entitled to:

   (a)   Compensatory damages in the amount of approximately $2,000 for the
         approximately 216 days that Espinosa worked over ten hours; and

   (b)   Liquidated damages pursuant to N.Y. Labor Law §198; and

   (c)   The costs of this action, including fees and costs of experts, together with
         interest and attorney's fees; and

   (d)   Such other and further relief as this Court deems just and equitable.

41.  By reason of the foregoing, Montero is entitled to:

   (a)   Compensatory damages in the amount of approximately $4,100 for the
         approximately 420 days that Montero worked over ten hours; and

   (b)   Liquidated damages pursuant to N.Y. Labor Law §198; and

   (c)   The costs of this action, including fees and costs of experts, together with
         interest and attorney's fees; and

   (d)   Such other and further relief as this Court deems just and equitable.

**FOURTH CLAIM**
**(Sexual harassment under Title VII)**

**Delgado Travel's hiring of Montero and Espinosa**

7

42.  Montero and Espinosa repeat and re-allege each and every allegation of paragraphs 1 through 23.

43.  During approximately the second week of June 2003, Delgado interviewed Monica Montero, Montero's cousin Alexandra Venegas ("Venegas"), and Montero's sister Rocio Montero for employment as sales agents in Delgado Travel's main office in Jackson Heights (the "main office").

44.  After conducting the interviews, during approximately the second week of June 2003, Delgado only hired Montero as a sales agent in the travel division.

45.  Approximately a few days later, Delgado approached Montero and said, "If you are nice to me, I will hire Alexandra [Venegas]."

46.  After this conversation, Delgado hired Venegas.

47.  On approximately July 27, 2003, Delgado hired Patricia Espinosa to also work as a sales agent in the main office.

48.  Espinosa and Montero are recent immigrants to the United States from Ecuador.

49.  Delgado has a pattern and practice of employing recent immigrants from Ecuador, regardless if they are "documented" or "undocumented," to work at Delgado Travel ("Delgado's pattern and practice.")

50.  Pursuant to his pattern and practice, Delgado informs newly immigrated employment prospects from Ecuador that they can obtain "green cards" and social security numbers by approaching a blond man on a particular street corner in Queens and paying him $75 to $100.

51.  Pursuant to his pattern and practice, and without knowing whether Espinosa and Montero were "documented" or "undocumented," Delgado informed Espinosa and Montero that

13

they could obtain a green card and a social security number from a "blond man" on a particular corner of Roosevelt Avenue in Queens by paying him $75 to $100.

52.   It is apparent that Delgado makes a practice of hiring recent immigrants, documented or undocumented, because he believes he can more easily exploit them (economically or sexually or both) in violation of labor laws and laws against sexual misconduct against employees by employers.

53.   When Espinosa and Montero presented their claims against Delgado Travel to the Equal Employment Opportunity Commission ("E.E.O.C.") for Delgado's sexual misconduct, its attorneys asserted that Delgado Travel was not liable because the complainants were allegedly undocumented employees who had no litigation rights under the provisions of the Immigration Reform and Control Act of 1986 ("IRCA.")

54.   Before the E.E.O.C., Delgado also alleged that it had investigated Espinosa's and Montero's immigration status after they left Delgado Travel– with the obvious purpose of retaliating against them for bringing sexual harassment claims against Delgado Travel.

55.   Also pursuant to Delgado's pattern and practice, Delgado Travel does not employ male employees as sales agents.

56.   Delgado Travel employs no more than ten male employees at its main office and those male employees are employed only as accountants, computer technicians, car drivers, and security agents.

57.   Also pursuant to Delgado's pattern and practice, Delgado Travel does not employ any "black people."

58.   Montero was told by her supervisor at Delgado Travel that, "Delgado does not like

black people."

59.  Upon information and belief, when a black person applies for employment with Delgado Travel, Delgado instructs a lower level manager to interview the candidate and to tell them that there are no positions available.

**Uniforms of Delgado Travel's female employees**

60.  Espinosa, Montero and all other female employees of the main office were required to wear a uniform at Delgado Travel that consisted of a blue mini-skirt, a sheer white blouse, and a blue blazer jacket.

61.  On approximately August 1, 2003, approximately five days after hiring Espinosa, Delgado called Espinosa into his office and told her that he had a "gift" for her.

62.  The "gift" was a name tag pin worn by all employees at Delgado travel on the upper left-hand side of the company jacket.

63.  Delgado approached Espinosa and tried to attach the pin to her jacket.

64.  Espinosa told Delgado that she could do it herself.

65.  Despite repeated requests for him to stop trying to place the pin on her jacket, Delgado insisted on placing the pin on Espinosa's jacket.

66.  As Delgado was attaching the pin, he moved his hand under her jacket and rubbed the back of his hand on Espinosa's breast.

**The events of August 10, 2003**

67.  On approximately August 10, 2003, several female employees of the main office, including Espinosa and Montero, were chosen by Delgado to participate in the Ecuadorian parade (the "parade.")

10

68.  A few days before the parade, Delgado told Espinosa and Montero that they had to "look good" for the parade, and that they had to buy new uniforms.

69.  Even though it was Delgado Travel's policy not to pay for the cost of uniforms, Delgado paid for the expenses of Montero's and Espinosa's new uniforms.

70.  The parade started at approximately 10:00 a.m. on August 10, 2003.

71.  After the parade, Delgado told the female employees who participated in the parade that they had to attend a party at his residence located on Riverside Drive in Whitestone, New York.

72.  When Montero and Espinosa arrived at Delgado's home, he noticed a "run" or tear in Espinosa's panty-hose.

73.  Delgado told both Montero and Espinosa to take their panty-hose off.

74.  Montero responded, "no" and said that she had a scar on her ankle.

75.  Delgado then said to Montero, "take it off" and "go to the swimming pool, and I will give you a bikini."

76.  Montero and Espinosa did not put on bikinis.

77.  Later in the afternoon, Delgado told all of the female employees present at the party that they would be accompanying him and some of his business associates on a cruise on Delgado's boat (the "cruise.")

78.  Montero and Espinosa told Delgado that they did not want to go on the cruise, but he said, "If you don't come with me, you can't come back to work."

79.  Montero and Espinosa boarded the boat at approximately 5:00 p.m.

80.  After the boat left shore, Montero and Espinosa discovered that only five female

11

employees were present on the boat.

81.   Delgado assured Montero that the boat would return between 6:30 p.m. or 6:40 p.m.

82.   During the cruise, Delgado gave Montero, Espinosa and the other female employees alcohol to drink.

83.   Montero told Delgado that she wanted to go home, but he did not take her back to shore.

84.   During the cruise, Delgado approached Espinosa on several occasions and told her that she was "hot" and "pretty."

85.   A client of Delgado Travel also approached Espinosa and said she was "hot."

86.   After this statement, Delgado became very angry and grabbed Espinosa by her arm and led her to the upper deck of the boat, away from all of the other guests.

87.   Once they arrived at the upper deck area, Delgado said to Espinosa "You are mine.  I do not like you talking to other men."

88.   Delgado then told Espinosa that she was fired because she was "flirting."

89.   Later during the cruise, Delgado told Espinosa that he was not going to fire her but said, "You must be very nice to me because now you are one of my girls."

90.   Also during the cruise, Delgado grabbed Espinosa and Montero by the arm and took them to the top of the boat where the captain's chair and steering wheel were located.

91.   Delgado instructed Montero and Espinosa to sit on either side of him in the chair.

92.   As Montero and Espinosa sat beside Delgado, he began to rub their legs and said, "Give me a kiss."

93.   Montero asked Delgado for a cell phone to call her husband, but he refused to give

12

Montero a phone.

94.  Delgado said to Montero, "Forget about your husband, you are supposed to be my little girl."

95.  Both women then told Delgado that they had to use the restroom, stood up, and left the upper-deck area of the boat.

96.  Montero and Espinosa did not return to that area of the boat.

97.  After several hours, the passengers of the cruise, including Delgado, Montero and Espinosa became intoxicated from the alcohol.

98.  At one point during the cruise, the boat's engines would not start.

99.  It became very late so Montero, Espinosa and two other female employees went to the cabin of the boat.

100.  During this time, the police approached the boat, boarded it, and cited Delgado for open containers of alcohol.

101.  Delgado's crew repaired the boat during this time.

102.  While the boat was being fixed, Montero, Espinosa and the other female employees fell asleep on the bed in the cabin.

103.  While the female employees slept, Delgado entered the room.

104.  Delgado woke the other female employees and sent them out of the cabin, leaving just Delgado, Espinosa and Montero in the room.

105.  Delgado woke Montero by rubbing her buttocks.

106.  Delgado also started rubbing the inside of Espinosa's legs and thighs.

107.  Montero and Espinosa ran out of the cabin.

13

108.  When the boat arrived back at Delgado's residence, it was approximately 4:00 a.m.

109.  Montero and Espinosa went upstairs in Delgado's residence and called Montero's husband (who is Espinosa's brother) and Espinosa's parents.

110.  Montero and Espinosa returned downstairs and told Delgado that they had called for a taxi to take them home.

111.  Delgado's wife said to Montero and Espinosa, "Call and cancel the taxi.  You can stay here."

112.  Delgado then placed a bundle of $100 dollar bills (worth approximately $1,000) in Montero's hand and said to Montero "you can't go home."

113.  Delgado's wife looked at Montero and said, "Don't say anything.  Just take the money and go upstairs."

114.  Montero gave the money back to Delgado's wife.

115.  At approximately 5:00 a.m., Espinosa's parents and Montero's husband arrived to take them home.

**The events of September 2003**

116.  During approximately mid-September 2003, Delgado requested Espinosa to attend a dinner with him and another employee, Alexandra Venegas.

117.  While driving to the restaurant, Delgado started rubbing Espinosa's hands.

118.  Espinosa moved her hands away.

119.  Delgado then took Espinosa's hands and placed them on his thigh.

120.  Again, Espinosa moved her hands away.

121.  After they arrived at the restaurant, Delgado began to describe various sexual

14

positions to Venegas and Espinosa, including one that referred to the manner in which tigers mate.

122.  Delgado detailed the process to the two employees, explaining how the male tiger enters the female tiger from behind.

123.  Delgado then asked Venegas and Espinosa about sexual "likes" and "dislikes" – specifically, he asked what sexual positions they preferred.

124.  After this comment, Espinosa excused herself from the table and went to the ladies room.

125.  When Espinosa returned, she saw Delgado grab Venegas's face and kiss her.

126.  Delgado asked Espinosa if she "liked to have multiple sex partners," to which she replied, "No!"

127.  Delgado said he was very upset to hear that, and turned to Venegas and said, "Patricia is not very smart, so when we all have sex, you're going to get the better position."

128.  Venegas went to the bathroom, and while she was gone, Delgado put his hand on Espinosa's thigh and started to move it up towards her genital area.

129.  Espinosa tried to move away from him, at which time he said, "Why are you acting like this? I thought you were more intelligent than that," and he tried to kiss her.

130.  When Venegas came back to the table, Espinosa kicked her under the table and told Venegas not to leave her alone with him again.

131.  Delgado ordered several bottles of wine over the course of the dinner, and was constantly encouraging Espinosa and Venegas to drink.

132.  Venegas had too much to drink and became ill.

133.   Espinosa told Delgado that Venegas was sick and that they wanted to go home.

134.   While Delgado was paying the check, he told Espinosa that he "liked [her] breasts and ass."

**The events of November 2003**

135.   During Espinosa's and Montero's period of employment, Delgado would call Montero and Espinosa to his office approximately once a week.

136.   During one particular visit in approximately November 2003, Montero and Espinosa entered Delgado's office and found Delgado sitting behind his desk.

137.   After Montero and Espinosa sat down, Delgado got up from his chair and closed the blinds that covered his windows.

138.   Delgado then said to Montero, "You know if you ever need anything, I can help you."

139.   Delgado then came around from behind his desk and rubbed Montero's arms.

140.   Delgado then kissed Montero on her lips which caused Montero to draw back from Delgado.

141.   At Montero's withdraw, Delgado said, "What... you don't know how to kiss me or don't want to?"

142.   Montero replied, "Why did you do that Mr. Delgado? You are like my father!"

143.   Delgado said, "But I am not your father."

144.   Delgado then grabbed Espinosa around the waist, pulled her close to him, and said, "Look... Patricia is going to show you how to kiss.  Patricia, kiss me."

145.   Delgado kissed Espinosa on the lips and inserted his tongue into her mouth.

16

146.  Espinosa pulled away from Delgado and said, "Mr. Delgado, we have to leave."

**The events of January 6, 2004**

147.  On January 6, 2004, Delgado's daughter Linda Delgado ("Linda"), threw a surprise birthday party for Delgado at a dance club.

148.  All the female employees in the travel division of the main office contributed money to buy Delgado a gift.

149.  Montero suggested that the division buy him a plaque recognizing his work at Delgado Travel, but Linda rejected Montero's suggestion and used the money to purchase a belly dancer to perform at Delgado's dinner.

150.  Upon information and belief, approximately thirty female employees of Delgado Travel, his two daughters, their boyfriends, and Delgado's wife went to Delgado's birthday dinner.

151.  During the dinner, Montero and Espinosa left the restaurant to smoke a cigarette.

152.  When they returned, Delgado grabbed Monica's arm and said, "Where have you been.  The party is here.  You have to say here with me."

153.  Delgado became very intoxicated during this dinner.

154.  After the dinner, Delgado instructed the female employees in attendance to form a circle around him while he danced.

155.  Delgado grabbed Espinosa and Montero and pulled them into the middle of the circle close to him.

156.  Delgado then positioned Espinosa and Montero so that Montero was in front of him and Espinosa was behind him.

157.  Delgado simulated sexual motions, thrusting his hips back and forth so that his pelvis repeated touched Montero's buttock and Espinosa's genital area.

158.  Delgado said to Montero, "Usted esta enterita,"  which translated means, "You look so hot."

159.  Delgado then said, "Give me a kiss."

160.  Espinosa and Montero left Delgado on the dance floor, and Delgado took another female employee, Norma Altamirano, and kissed her.

161.  As the party was ending, Montero told Delgado that she had to go home.

162.  Delgado then said, "you can't go home, you have to go to my home."

163.  As they tried to leave, Delgado cornered Espinosa, Montero and another female employee, Fatima Dominguez, between two tables and a wall.

164.  Delgado placed his driver Mario as a security guard in the vicinity around the three employees so that they could not leave and others could not approach them.

165.  Delgado pulled the three female employees very close to him, and whispered in Spanish in their ears, "You have a big ass, " "I want to fuck your ass," "I want to put my tongue in your ass," and "I want to put my penis in your ass."

166.  Delgado then put his tongue in Montero's ear.

167.  Espinosa said to Delgado's daughter, Linda Delgado, "I need to go to my house."

168.  Montero said to Delgado's other daughter, Janet Delgado, "What happened to your father?"

169.  Janet Delgado responded to both Montero and Espinosa saying, "Don't say anything.  Only say 'yes.'  I will get him out of here."

18

170.  Montero and Espinosa then said to Delgado, "We have to go to the bathroom."

171.  Delgado responded, "No, you have to go home with me."  "I want to be with the two of you [Espinosa and Montero]."

172.  Again, Montero told him "I have to go to the bathroom."

173.  At this point, Espinosa and Montero ran back into the middle of the crowd in the dance club.

174.  Delgado tried to look for Montero and Espinosa for forty-five minutes, but the two employees hid from him in the crowd of people.

**The events of February 2004**

175.  During Espinosa's and Montero's periods of employment, Delgado repeatedly referred to both Espinosa and Montero as his "favorites" and provided them with gifts that he would not provide the other employees.

176.  In approximately February 2004, Montero found $95 missing from her cash drawer.

177.  Montero approached Delgado and told him that she had money taken from her cash drawer while working.

178.  Delgado then took $95 from his pocket and gave it to Montero.

179.  Montero said to Delgado, "No, Mr. Delgado, I cannot take this," to which Delgado replied, "Take it."

180.  In approximately February 2004, Delgado placed a three way telephone call to Espinosa and Montero at their work stations and told them to come to his office.

181.  Montero and Espinosa went to Delgado's office and sat on a couch across from where Delgado was sitting.

182.  During the conversation, Delgado approached the two female employees and sat down between them.

183.  Delgado said, "If you are nice to me, I will help you.  I will give you money."

184.  After Delgado made this comment, he grabbed each of their heads and kissed both of them on the lips.

185.  Also in approximately February or March 2004, Delgado requested that Montero and Espinosa attend a dinner at a restaurant in honor of his wife's birthday.

186.  Delgado called Montero and Espinosa while they were working and said, "We are going to have a birthday party for my wife.  Wear a mini-skirt because I like your legs."

187.  Montero and Espinosa attended the dinner with Delgado, his family, and three other employees including a supervisor from Delgado Travel at a restaurant in Manhattan.

188.  After dinner, Montero and Espinosa told Delgado that they were going to take a taxi home.

189.  Delgado said, "No, I will take you home."

190.  Delgado, his wife, his daughter, Montero and Espinosa got into Delgado's car.

191.  When Delgado approached the area in Queens where Espinosa and Montero lived, he did not drop them off but kept driving in the direction of his house.

192.  Espinosa said, "You just passed my house.  I have to go home."

193.  Delgado responded, "We are going to my house," and he turned up the music in the car to make it difficult for Montero and Espinosa to speak to him.

194.  At approximately 12:30 a.m., Delgado, his family, and Montero and Espinosa arrived at his house.

20

195.  After they entered the house, Delgado locked the doors and opened a bottle of whiskey.

196.  Delgado said to Montero and Espinosa, "If you want to leave, you must drink.  If you don't drink, you cannot leave."

197.  Delgado grabbed Espinosa's arm and said, "I want to see you drink."

198.  Espinosa left Delgado and found the housekeeper who worked for Delgado's family and asked for a taxi.

199.  Espinosa was able to call a taxi at approximately 4:30 a.m., and Espinosa and Montero both left the Delgado residence.

**The events of April 20, 2004**

200.  On April 20, 2004, Delgado took Espinosa and Montero to lunch for their birthdays.

201.  During lunch, Delgado ordered approximately five or six bottles of wine and became very drunk.

202.  Around 6:00 p.m., Espinosa asked him if she could go home.

203.  Delgado said, "No.  You are still on the job.  You can't go home."

204.  Delgado started to rub Espinosa's leg and told her how pretty she was.

205.  Montero told Delgado that she had to go home to care for her son.

206.  Delgado called Montero's cousin, Alexandra Venegas, and told her to pick Montero's son up and watch him for the evening.

207.  Delgado then took Espinosa and Montero on a drive where he stopped at a liquor store and bought alcohol.

21

208.  While Delgado was in the liquor store, Montero and Espinosa asked Delgado's driver, Mario, to take them home.

209.  Delgado returned to the car and took Montero and Espinosa to a music store where he told them to pick out music.

210.  Montero and Espinosa refused to pick out music.

211.  Upon leaving the music store, Montero said, "We have to go back to the office," to which Delgado replied "No, let's go to a hotel."

212.  Espinosa told Delgado that she did not want to go to a hotel.

213.  Delgado said, "I bet if you were with other people, you would go."

214.  Espinosa then told Delgado that they should return to the office because she and Montero had work to do.

215.  Delgado called the office and told the other staff members to finish the work that Montero and Espinosa had for that day.

216.  Espinosa told Delgado that she really had a lot of work to do, and should return to the office.

217.  Delgado then took Montero and Espinosa to his house.

218.  When they entered Delgado's house, Delgado locked the door.

219.  Espinosa and Montero went up the stairs and tried to call Espinosa's parents.

220.  However, Delgado followed them up the stairs, and started to grab their buttocks as they walked.

221.  While upstairs Delgado said, "Pick which room you want.  We are going to have sex.  It is my fantasy to have sex with the both of you."

22

222.  Espinosa then tried to call her parents with her cell phone, but Delgado grabbed the phone away from her.

223.  Delgado said to the both of them, "Don't worry about the pain.  If you drink liquor, you will feel no pain."

224.  Montero and Espinosa went down stairs to the kitchen where Delgado followed them.

225.  Delgado then told Montero to use the restroom.

226.  Espinosa sat down at the kitchen table, and Delgado started to rub her leg.

227.  Espinosa tried to move away from him, but Delgado moved behind her chair, rubbed her chest and neck, and stuck his tongue into her ear.

228.  Espinosa began to cry and told him to "please stop," but Delgado did not stop.

229.  When Montero returned to the kitchen, Montero found Espinosa crying.

230.  Delgado had his hand up Espinosa's miniskirt' and was touching her inner thigh and genital area.

231.  Espinosa told him to stop.

232.  Delgado grabbed Montero and pulled her close to him and Espinosa and said, "kiss me!"

233.  Montero said, "Why are you doing this? You can't do this!"

234.  Delgado replied, "Yes, I can!"

235.  Delgado asked if Espinosa and Montero would like to go upstairs.

236.  Montero and Espinosa told Delgado that they wanted to leave.

237.  Delgado said, "If you want to leave, you have to kiss me now," and "If you want

your job you have to do this."

238.   Espinosa pulled away from Delgado, went into the living room, and tried to unlock the door.

239.   Delgado grabbed Montero and said, "I want to fuck you in the ass. I want to put my tongue in your ass.  Don't worry about the pain.  If you drink a lot you will feel no pain."

240.   Delgado began to touch Montero all over her body, including her legs, thighs, and breasts.

241.   Espinosa stayed in the living room for approximately 30 minutes.

242.   When Espinosa came back to the kitchen, Delgado stopped.

243.   At this point, Delgado's driver, Mario, entered into the kitchen.

244.   Once Mario left, Delgado told the two employees, "This summer you don't have to work 60 hours like the other girls.  You only have to work 40 hours and the other time you can spend with me at my house, or my boat, or at a discotheque."

245.   Montero responded, "I can't Mr. Delgado.  I have to leave.  My son is home alone."

246.   Delgado said to both of the employees, "If you want to leave, you have to kiss me now."

247.   Montero told Delgado, "But, you are like my father."

248.   Delgado responded, "If you want your job, you have to do this."

249.   Delgado then began to touch Montero and Espinosa all over their bodies, and again he put his hand up Espinosa's mini-skirt.

250.   Espinosa was still crying as Delgado touched her.

251.   During this time, Mario returned but Delgado sent him home.

24

252.   At this point, Espinosa left Delgado's house and walked home.

253.   Montero was alone with Delgado, after Espinosa and Mario left.

254.   Delgado said to Montero, "You and me are going to the hotel."

255.   Montero responded, "No, its too late, I have to leave because my son is at home."

256.   Delgado told Montero to "stay," to which Montero replied "no!"

257.   Delgado then drove Montero home.

**Espinosa's resignation**

258.   Espinosa did not return to Delgado Travel the following day on April 21, 2004.

259.   In order to avoid further sexual misconduct by Delgado (which she was required to tolerate to keep her job) Espinosa resigned from Delgado Travel effective April 20, 2004.

260.   Approximately a few days after Espinosa's resignation, Delgado repeatedly asked Montero, "Where's Patricia.  I want her back."

261.   Delgado told Montero, "If you are nice with me, I'll be nice with you."

262.   Delagado also said, "Remember, you're my little girlfriend.  I can help you if you help me."

263.   At the end of the conversation, Delgado grabbed Montero's arm and said, "You forget something?"

264.   Montero said, "No."

265.   Delgado said, "You have to kiss me now."

266.   Delgado then pulled Montero close to him, grabbed her face, and kissed her on the lips.

267.   Delgado inserted his tongue into her mouth.

25

268.  After the night of April 20, 2004, Espinosa told a friend, Michael Senese ("Senese"), a lieutenant with the New York state courts, of the events that occurred at Delgado's residence on April 20th.

269.  On approximately April 21, 2004, Espinosa called the local police department in Queens to report Delgado's actions.

270.  Espinosa did not file a report with the local police at that time because Delgado's son-in-law is a sergeant in the local precinct.

271.  Senese then contacted Joseph DeFrancis ("DeFrancis"), a New York Police Department Homicide Detective with the 110th precinct who also manages the security detail at Delgado Travel.

272.  DeFrancis told Espinosa to file charges with the Queens Special Victims Squad.

273.  On approximately April 21, 2004, Espinosa called Vincent Pellizzi ("Pellizzi") of the Queens Special Victims Squad who scheduled an appointment to meet with her.

274.  Espinosa met with Pellizzi during approximately the first week in May 2004.

275.  The charges of "forcible touching" and "sexual abuse in the third degree" were filed against Delgado on approximately May 12, 2004.

276.  As a result of these charges, Delgado was arrested on approximately May 12, 2004.

277.  Delgado was released from custody on approximately May 13, 2004.

**Montero's meetings with Delgado's lawyers**

278.  Montero met with Delgado's attorneys on two separate occasions.

279.  The first meeting occurred on approximately May 13, 2004, the day Delgado was released from custody, (the "first meeting.")

280.  Just prior to the first meeting, Delgado called Montero into his office.

281.  Present at this meeting were Delgado's two daughters, Janet and Linda.

282.  Delgado said, "Monica, explain to my daughters what happened with Patricia.  You know I never touched her.  You know."

283.  Montero did not say anything to these remarks.

284.  Delgado then told his daughters to leave the room.

285.  After they left, Delgado said, "Monica, I have a big problem.  Now you have a big problem."

286.  Delgado then said, "If you help me, I will help you.  You can only stay here if you help me."

287.  Delgado then instructed Montero to tell his lawyers that she did not speak English, despite the fact that she does speak English.

288.  Delgado also told Montero that his daughter, Linda, would stay in the room and act as a "translator" for her even though Montero did not require a translator.

289.  Delgado said to Montero, "You know what you have to say.  You have to say nothing happened."

290.  After Montero had this conversation with Delgado, she left Delgado's office and met with Delgado's attorneys and his daughter Linda, in Linda's office.

291.  During this meeting, Delgado's attorneys asked Montero if Delgado had pinned Espinosa's pin on her.

292.  Montero told them that she did not know.

293.  Delgado's attorneys then asked her about the April 20th incident.

294.  Montero told them that Espinosa drank a lot of whiskey but that nothing happened between Delgado and Espinosa.

295.  After this meeting, Delgado called Montero back to his office.

296.  Delgado asked her what questions his attorneys asked and how she responded.

297.  Montero told Delgado that she did as she was instructed and told the attorney's that nothing happened between him and Espinosa.

298.  Approximately, four or five days after the first meeting, she met with Delgado's attorneys a second time (the "second meeting").

299.  Just prior to this second meeting, Delgado told Montero that she had to repeat everything she said during the first meeting.

300.  During the second meeting, Delgado's daughter, Linda, did not enter the office where the attorneys and Montero met, but upon information and belief, she remained just outside the door where she could hear everything said during the meeting.

301.  Montero asked Delgado's attorneys, "Who are you?"

302.  Delgado's attorneys said, "We are Delgado's friends."

303.  During this second meeting, Delgado's attorneys asked Montero many of the same questions as in the first meeting.

304.  Delgado's attorneys asked about Espinosa's boyfriend, if Espinosa likes to drink alcohol and smoke cigarettes, and if Espinosa likes to party at strip clubs.

305.  Montero told Delgado's attorneys that Espinosa does drink alcohol and smoke cigarettes but does not know if she likes to party at strip clubs because she has never gone to a strip club with Espinosa.

306.  Immediately after the second meeting, Montero returned to her workstation.

307.  Upon information and belief, after Montero left the meeting, Delgado's attorneys interviewed other female employees of Delgado Travel.

308.  Approximately three or four hours later, Linda Delgado and Delgado's attorneys called Montero back to Linda's office, said they "forgot to get her signature," and presented Montero with a document.

309.  Montero did not read the document, but just signed the document and went back to her workstation.

310.  Upon information and belief, after Montero returned to her work station, the other female employees who were interviewed previously that day were also called to Linda's office to sign documents as well.

**Montero's resignation**

311.  In order to avoid further sexual harassment by Delgado (which she was required to tolerate to keep her job) Montero resigned from Delgado Travel on November 24, 2004.

312.  No procedure existed in the main office of Delgado Travel for resolving complaints of sexual harassment while Montero and Espinosa were employed there, nor were Montero and Espinosa ever informed or provided with any writing that detailed a complaint procedure.

313.  Upon information and belief, if a female employee did not do what Delgado instructed, Delgado transferred that employee to an unfavorable branch office of Delgado Travel or change that employee's work schedule to an unfavorable time schedule.

314.  Montero's and Espinosa's supervisor Luz Alvarado ("Alvarado") was aware of Delgado's behavior but did nothing to prevent it.

29

315.  In approximately December 2003, Delgado was drinking alcohol in his office.

316.  After becoming intoxicated, Delgado came to Espinosa's workstation and touched her on the buttocks.

317.  Alvarado saw the incident, as did other employees at Delgado Travel.

318.  Espinosa said to Alvarado, "Did you see what he did to me?"

319.  Alvarado replied, "Oh yes, he is terrible."

320.  As is set forth above, Delgado Travel through its President, Hector Delgado, engaged in sexual harassment in violation of Title VII of the Civil Rights Act of 1964 §§701 *et seq*.

321.  Espinosa and Montero filed charges of sexual harassment in violation of Title VII with the E.E.O.C. within 180 days of the last unfair employment practice.

322.  Espinosa and Montero both received notifications of their right to sue Delgado Travel from the E.E.O.C. on May 19, 2005.

323.  By the reason of the foregoing, Espinosa is entitled to:

(a)    Compensatory damages for pain and suffering in the amount of approximately $300,000; and

(b)    Back pay in the amount of approximately $30,000, plus approximately $1,600 per month for every month subsequent to the date of this complaint until judgment; and

(c)    Reinstatement, or, in the alternative front pay including loss of future earnings in the amount of approximately $500,000; and

(d)    Punitive damages in the amount of approximately $2,000,000 or the maximum permitted by law; and

(e)    The costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

(f)     Such other and further relief as this Court deems just and equitable.

324.  By the reason of the foregoing, Montero is entitled to:

(a)     Compensatory damages for pain and suffering in the amount of approximately $300,000; and

(b)     Back pay in the amount of approximately $21,000, plus approximately $1,800 per month for every month subsequent to the date of this complaint until judgment; and

(c)     Reinstatement, or, in the alternative, front pay including loss of future earnings in the amount of approximately $500,000; and

(d)     Punitive damages in the amount of approximately $2,000,000 or the maximum permitted by law; and

(e)     The costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

(f)     Such other and further relief as this Court deems just and equitable.

## FIFTH CLAIM
### (Sexual harassment under New York Human Rights Law)

325.  Montero and Espinosa repeat and re-allege each and every allegation of paragraphs 1 through 23 and 42 through 319.

326.  As is set forth above, Delgado Travel by its President, Hector Delgado, engaged in sexual harassment in violation of N.Y. Executive Law §290, *et seq.*, causing Espinosa and Montero to resign from employment at Delgado Travel.

327.  Supplemental jurisdiction is conferred pursuant to 28 U.S.C. §1367 to claims in violation of N.Y. Executive Law §290, *et seq.*

328.  Espinosa and Montero seek compensatory damages, punitive damages and attorney's fees to redress the deprivation of rights accorded to them under N.Y. Executive Law §290, *et seq.*

31

329.  By reason of the forgoing, Espinosa and Montero are entitled to the relief set forth in paragraphs 323 and 324.

330.  Prior to filing with the United States District Court for the Southern District of New York, this complaint has been served on the New York Commission on Human Rights and on the Corporation Counsel for the New York City as required by N.Y. Code §8-502(c).

## SIXTH CLAIM
### (Sexual harassment under New York City Administrative Code)

331.  Montero and Espinosa repeat and re-allege each and every allegation of paragraphs 1 through 23 and 42 through 319.

332.  As is set forth above, Delgado Travel by its President Hector Delgado engaged in sexual harassment pursuant to  N.Y.C. Administrative Code Title 8, §8-107, *et seq.*, causing Espinosa and Montero to resign from employment at Delgado Travel.

333.  Supplemental jurisdiction is conferred pursuant to 28 U.S.C. §1367 to claims in violation of  N.Y.C. Administrative Code Title 8, §8-107, *et seq.*

334.  Espinosa and Montero seek compensatory damages, punitive damages and attorney's fees to redress the deprivation of rights accorded to them under  N.Y.C. Administrative Code Title 8, §8-107, *et seq.*

335.  By reason of the forgoing, Espinosa and Montero are entitled to the relief set forth in paragraphs 323 and 324.

**Wherefore**, it is respectfully requested that this Court award the relief set forth in paragraphs 25, 26, 30-32, 39-41, 323, 324, 328, 329, 334 and 335.

August 3, 2005

     /s/ Peter G. Eikenberry

**PETER G. EIKENBERRY** (PGE-7257)
*Attorney for plaintiffs*
*Espinosa and Montero*
74 Trinity Place, Suite 1609
New York, New York 10006
(212) 385-1050